## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CARPENTERS' PENSION TRUST FUND –
DETROIT AND VICINITY,
               Plaintiff,

                         Case No. 14-11535

       v.                  HON. TERRENCE G. BERG

CENTURY TRUSS COMPANY d/b/a
BERGERON CORPORATION, and
CENTURY TRUSS COMPANY OF
MICHIGAN L.L.C., and B. GERALD
BARTUSH as personal representative of the
ESTATE OF RANDY M. BERGERON,
               Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. 12)

Before the Court is Defendant B. Gerald Bartush's ("Bartush's") motion to dismiss, (Dkt. 12), filed in his capacity as the personal representative to the estate of Randy M. Bergeron on June 26, 2014 ("the Estate").[1]  Oral argument was heard on September 17, 2014 and the Court took the motion under advisement on September 18, 2014.  For the reasons set out below, Defendant's motion to dismiss for lack of subject matter jurisdiction **IS GRANTED**.  Accordingly, the complaint of Plaintiff Carpenters' Pension Fund-Detroit and Vicinity ("Plaintiff") **IS DISMISSED WITHOUT PREJUDICE**.

## I.  INTRODUCTION

This case raises the question of whether the "probate exception" to federal jurisdiction bars the plaintiff's claim against the estate of its alleged former debtor.

---

[1]  The other defendants, unrepresented corporate entities, are defunct and do not join in this motion.

Plaintiff Carpenters' Pension Fund-Detroit and Vicinity ("Plaintiff") claims that Mr. Randy M. Bergeron and his two alleged alter-ego companies, which are now defunct, Century Truss Company and Century Truss Company of Michigan (collectively "the Companies") failed to make certain required contributions under the Employee Retirement Income Security Act ("ERISA.")

Following Mr. Bergeron's death, Bartush, as the representative of the Estate, notified Plaintiff that it had four months to bring a claim against the Estate under Michigan's probate code.  After Plaintiff presented its claim, Bartush denied it in full and alerted Plaintiff that it had 63 days following the notice of denial to bring suit.  Unfortunately, Plaintiff did not bring suit against the Estate until well past the 63-day mark.  Bartush argues that the suit should be dismissed because it seeks a judgment in federal court against an Estate currently under the authority of a state probate action, and the "probate exception" to federal jurisdiction deprives this Court of jurisdiction to decide this dispute.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a jointly-trusteed trust fund established under ERISA for the benefit of its members.  (Dkt. 11.)  Bartush is the personal representative of the Estate of Randy M. Bergeron.  Mr. Bergeron was the owner of Century Truss and of Century Truss of Michigan ("the Companies"), defendants in this action.

According to Plaintiff, the Companies were required to make contributions to the Trust Fund as part of a collective bargaining agreement between the parties.

(*Id.*)  On or about October 29, 2010, Plaintiff claims that the Companies ceased operations, laid off all of their employees and stopped making their required contributions.  (Dkt. 17, p.7.)  Hence, Plaintiff alleges that the Companies withdrew from its plan, and as a result incurred withdrawal liability under ERISA in the amount of $3,511,506.  (*Id.*)

On August 25, 2011, Plaintiff wrote to Mr. Bergeron and the Companies demanding payment of the alleged withdrawal liability.  (*Id.* at Ex. B.)  According to Plaintiff, Mr. Bergeron refused its demand for payment and stated that the Companies would also not make any withdrawal liability payments.  (*Id.* at p. 4.)  In addition to refusing to pay the charged withdrawal liability, Plaintiff alleges that Mr. Bergeron improperly transferred the Companies' assets to himself.  (Dkt. 17, p. 7.)

Plaintiff then brought suit twice against the Defendants.  Both suits ended up being dismissed for failure to prosecute.  Plaintiff filed the first suit in this Court on November 21, 2012.[2]  On April 25, 2013, this Court dismissed Plaintiff's complaint without prejudice for failure to prosecute because Plaintiff failed to effectuate service within 120 days as required under Federal Rule of Civil Procedure 4(m).  Plaintiff then re-filed its complaint on June 16, 2013.  On December 18, 2013, this Court dismissed Plaintiff's second suit for failure to

---

[2] *See* E.D. of Michigan Case No. 12-15165.

prosecute because, remarkably, Plaintiff again failed to effectuate service on the summonses as required by Rule 4(m).[3]

Months after Plaintiff filed its second suit, on September 2, 2013, Mr. Bergeron died.[4]  On October 10, 2013, Bartush, as personal representative of the Estate, published a notice to creditors informing them of Mr. Bergeron's death and notifying them that they had four months from the date of the notice to present their claims against the Estate.  (Dkt. 12, pp. 4-5.)  Plaintiff presented a timely claim against the Estate on October 30, 2013.  (*Id.* at p. 5.)  On December 20, 2013, two days after this Court had dismissed Plaintiff's second suit for failure to prosecute, Bartush issued a notice of disallowance and mailed it to Plaintiff by first-class mail.  (*Id.* at p. 3.)  The notice disallowed Plaintiff's claim in full and informed Plaintiff that its claim would be forever barred unless Plaintiff started a civil action within 63 days of the mailing or delivery of the notice.  (*Id.*)  Plaintiff denies ever receiving the notice of disallowance.  (Dkt. 17, p. 14.)

Plaintiff then filed its third suit in this Court against Defendants on April 16, 2014.  The suit was filed more than 63 days after the date when Bartush mailed the notice of disallowance.  According to the notice disallowing Plaintiff's claim, Plaintiff had until February 23, 2014 to file suit, 63 days after the notice of disallowance was mailed on December 20, 2013.  Unfortunately, Plaintiff waited

---

[3] *See* E.D. of Michigan Case No. 13-12701.

[4] The circumstances of Mr. Bergeron's untimely death are not relevant to this case, but the Court notes that the cause of his death is not entirely clear.  *See* Macomb Daily News, "Dead Royal Oak man named in $4m lawsuit", *available at* http://www.macombdaily.com/general-news/20130904/dead-royal-oak-man-named-in-4m-lawsuit.

nearly four months after the second lawsuit was dismissed for failure to prosecute in December 2013, to file the instant case.  Plaintiff amended its complaint on June 12, 2014, bringing six counts against the Defendants.  The six counts include: (1) withdrawal liability under ERISA; (2) controlled grouped liability; (3) transaction to evade liability; (4) alter-ego/successor liability; (5) breach of fiduciary duty; and (6) piercing the corporate veil.  (Dkt. 11.)  Plaintiff seeks to recover $3,511,506 against "Defendants and Decedent's estate…"  (*Id.*)

On June 26, 2014, Bartush filed this motion to dismiss on behalf of the Estate.  (*See* Dkt. 12.)  In his motion, Bartush seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6).  The Court heard oral argument on September 17, 2014 and took the motion to dismiss under advisement on September 18, 2014.

## III.   ANALYSIS

### A. Standard of Review

Bartush moves to dismiss for lack of subject matter jurisdiction.  Where subject matter jurisdiction is challenged in a Rule 12(b)(1) motion, the plaintiff bears the burden of proving jurisdiction.  *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks.  *See* Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

A facial attack challenges the sufficiency of the pleading itself.  Where the Rule 12(b)(1) motion presents a facial attack, the Court accepts the material allegations in the complaint as true and construes them in the light most favorable to the nonmoving party, similar to the standard for a Rule 12(b)(6) motion.  *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)).

In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction."  *Id.*  Where the motion presents a factual attack, the allegations in the complaint are not afforded a presumption of truthfulness and the Court weighs the evidence to determine whether subject matter jurisdiction exists.  On a factual attack, the Court has broad discretion to consider extrinsic evidence, including affidavits and documents, and can conduct a limited evidentiary hearing if necessary.  *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  In this case, Bartush is making a factual challenge to the Court's jurisdiction.

Bartush also moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6).  "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true."  *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the

plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff.  *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations."  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228–29 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions."  *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009).  "To survive a motion to dismiss, [a plaintiff] must plead enough factual matter that, when taken as true, state[s] a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotations omitted).  Plausibility requires showing more than the "sheer possibility of relief but less than a probab[le] entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings.  *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).  Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings.  *See Wysocki v. Int'l Bus. Mach.*

*Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n. 1 (6th Cir. 2010).

### B. Discussion

### 1.  The Court Lacks Jurisdiction over the Case because the Probate Exception Plainly Applies.

Defendant argues that the probate exception to federal jurisdiction deprives the Court of jurisdiction over the complaint. After carefully reviewing the case law, the Court concludes that Defendant is correct: the complaint must be dismissed because the probate exception to federal jurisdiction applies.

In *Markham v. Allen*, 326 U.S. 490, 494 (1946), the Supreme Court declared that under the probate exception, "a federal court has no jurisdiction to probate a will or administer an estate." This restriction on federal jurisdiction was limited. The Supreme Court held that federal courts could entertain suits as long as they did not "interfere with the probate proceedings or assume general jurisdiction of the probate or control the property in the custody of the state court." *Id.*

Post-*Markham*, federal courts struggled to define what constituted "interfering with" a state's probate proceedings. *See* Allison Elvert Graves, *Marshall v. Marshall: The Past, Present, and Future of the Probate Exception to Federal Jurisdiction*, 59 Ala. L. Rev. 1643 (2008). Lower courts created three basic

tests to determine whether a claim would "interfere with probate proceedings", the "route test", the "nature of the claim test", and the "practical test." *Id.* at 1645.

Under the route test, courts looked at "whether the suit could have been brought in a state court of general jurisdiction as well as in a probate court." If it could be brought in both courts, the probate exception would not apply. *Id.*; *see also Reinhardt v. Kelly*, 164 F.3d 1296, 1300 (10th Cir. 1999).

Under the nature of the claim test, courts held that the probate exception applied where the court had to "adjudicate the validity of a will in order to resolve the claim." *Marshall*, 59 Ala. L. Rev. at 1645. Where the validity of the will was not in question, courts held that the probate exception did not apply. *See Rice v. Rice Found.*, 610 F.2d 471, 476 (7th Cir. 1979).

Lastly, under the practical test, courts held that the probate exception barred federal courts from "exercising jurisdiction [where] the claim [was] 'ancillary to probate'" *Marshall*, 59 Ala. L. Rev. at 1646. A claim was ancillary to probate if "allowing [the suit] to be maintained in federal court would impair the policies served by the probate exception." *Dragan v. Miller*, 679 F.2d 712, 715 (7th Cir. 1986).

Against this backdrop, in *Marshall v. Marshall*, 547 U.S. 293 (2006), the Supreme Court revisited the probate exception and provided guidance that helps to define the contours of the exception. In *Marshall*, the Court explained that the probate exception, like the domestic relations exception, is a judicially-created

9

doctrine "stemming in large measure from misty understandings of English legal history." *Id.* at 299.  The Court then clarified that under the probate exception, "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Id.* at 311.  "Thus, the probate exception reserves to the state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 312.

Hence, under *Marshall*, the key distinction to determining whether the probate exception applies is whether an action is *in rem*, against property, or *in personam*, against a person.  An action *in rem* is "[a]n action determining the title to property and the rights of the parties…a real action."  Black's Law Dictionary (10th ed. 2014).  An action *in personam* is "[a]n action brought against a person rather than property." *Id.*

The Sixth Circuit applied this distinction in *Wisecarver v. Moore*, 489 F.3d 747 (6th Cir. 2007) and held that the probate exception did not apply to the *in personam* claims in the case.  In *Wisecarver*, plaintiffs sued alleging that the defendants had exerted undue influence on the testator leading to an improper bequest from the testator to the defendants. *Id.* at 748.  The plaintiffs sought to recover all the assets that the defendants received under the will, as well as assets

10

the defendants had received from the testator during his last two years of life.  *Id.* at 749.  The defendants claimed that the federal court lacked jurisdiction to entertain the suit.  *Id.*

Relying on the Supreme Court's decision in *Marshall*, the Sixth Circuit held that "to the extent that Plaintiffs' claims seek *in personam* jurisdiction over the Defendants, and do not seek to probate or annul a will, the probate exception does not apply." *Id.* at 750.

As such, the Sixth Circuit held that the probate exception did not bar plaintiffs' *in personam* claims against the defendants for assets transferred to the defendants during the testator's lifetime since these assets were not part of the probate estate.  *Id.*  The Sixth Circuit explained that these claims did not implicate the purposes of the probate exception because "these claims do not interfere with the *res* in the state court probate proceedings or ask a federal court to probate or annul a will." *Id.* at 751 (italics in original).

However, the Sixth Circuit held that plaintiffs' claims against the estate were barred since these claims "would require the district court to dispose of property in a manner inconsistent with the state probate court's distribution of the assets." *Id.* at 751.  Since these claims were *in rem*, they affected the possession of property in the custody of the state court.  *Id.*

With these principles in mind, the Court turns to the case at bar.  Plaintiff is suing the Estate seeking recovery of $3,511,506.  Plaintiff concedes that these funds, if they exist, are "currently…in the hands of the state probate court."

Yet Plaintiff insists that this action is not barred by the probate exception because it argues that this action is an *in personam* suit against Mr. Bergeron.  This argument is not well-taken.  Unfortunately, Mr. Bergeron is deceased; there is no person for Plaintiff to sue *in personam*.  Mr. Bergeron is no more; the law recognizes only his Estate as the entity which may be sued to recover debts.  Unlike in *Wisecarver*, where the plaintiffs were suing living defendants for undue influence, here the suit is against the Estate itself.  Where there are no living defendants, and the suit is directed against the property held by the Estate, this action cannot be construed as an *in personam* suit.  Further, Plaintiff's suit is not *in personam* merely because Plaintiff is suing Bartush as the personal representative of the Estate.  Bartush is representing the Estate as Mr. Bergeron is no longer alive to represent himself.

Plaintiff next claims that it is not really suing the Estate because the funds are improperly in the custody of the Estate.  Plaintiff alleges that Mr. Bergeron improperly transferred the Companies' funds to himself, and consequently, that the funds should never have been part of the Estate.  However, there is no exception to the probate exception that permits *in rem* actions against an estate so long as the property is allegedly improperly in the hands of the estate.  In *Marshall*, the

12

Supreme Court drew the distinction between *in rem* and *in personam* actions. According to *Marshall*, because the state court is exercising jurisdiction over the *res* of the Estate, this Court cannot exercise jurisdiction over the same *res*.  The provenance of the property constituting the corpus of the *res* is not relevant to whether the probate exception applies.  *See Marshall*, 547 U.S. at 311.

In sum, Plaintiff's suit is against the Estate for the recovery of property, *i.e.* an action *in rem*.  As an action *in rem*, the Court's exercise of jurisdiction here would implicate the purposes of the probate exception because it would disturb the state court's probate proceedings over property in its custody.  The Court cannot exercise jurisdiction over an area where the Supreme Court has expressly recognized an exception to federal subject matter jurisdiction.  As outlined by the Supreme Court in *Marshall,* the probate exception plainly applies here.  The Court therefore holds that it is without jurisdiction to decide this matter, and the Complaint must therefore be dismissed.

### 2.  Since the Probate Exception Applies, Plaintiff's ERISA Preemption Argument Must Fail.

Plaintiff next argues that it can properly bring suit because it claims that ERISA preempts the limitations period of Mich. Comp. Laws § 3804 which bars suits that commence "more than 63 days after the personal representative delivers or mails a notice of disallowance to the claimant."  Having decided that the probate exception applies, the Court concludes that Plaintiff's argument must fail.

13

The few courts that have considered both ERISA preemption and the probate exception have addressed the question by first determining whether the probate exception applies, because this determination will govern whether courts have jurisdiction to decide a dispute in the first place.  For example, in *May v. JP Morgan Chase & Co.*, No. 08-15263, 2009 WL 482719, at *1 (E.D. Mich. Feb. 25, 2009), the court held that the probate exception did not apply to suits that sought to add funds to an estate.  Similarly in *Fluker v. Anderson*, No. 4:06-cv-3394, 2008 WL 115103, at *2 (S.D. Tex. Jan. 10, 2008), the court held that the probate exception was inapplicable where the plaintiff's claim sought to recover funds transferred outside of probate proceedings that were not in the custody of the state.

In contrast to these cases, here Plaintiff is bringing an *in rem* suit against the Estate, clearly falling within the scope of the probate exception as articulated in *Marshall*.  Importantly, Plaintiff is not alleging that ERISA preempts the probate exception itself, or that the probate exception has a carve-out for ERISA claims. Indeed, these arguments are inconsistent with the role of the probate exception as a jurisdictional bar and with the Supreme Court's guidance on the scope of this rule in *Marshall*.  Plaintiff merely claims that the probate exception is inapplicable here, but the case law does not support this conclusion.  Where the probate exception applies, the Court lacks jurisdiction to consider this case, including Plaintiff's argument that the 63-day filing deadline of Mich. Comp. Laws § 3804 is preempted by ERISA.

14

Moreover, Plaintiff's preemption argument appears to be an attempt to make an end run around the probate exception.  In essence, Plaintiff alleges that ERISA's six-year statute of limitations preempts Michigan's requirement to bring claims within 63-days after a notice of disallowance is issued.  For support, Plaintiff relies on the Ninth Circuit's decision in *Bd. of Trs. of Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.*, 830 F.2d 1009 (9th Cir. 1987).  In *Johnson*, the Ninth Circuit held that ERISA preempted a Montana probate code that provided that all claims against an estate had to be brought within four months of publication of notice to creditors.  *Id.* at 1016.  The Ninth Circuit reasoned that the Montana code plainly related to ERISA because "Congress expressly provided a period of limitations governing actions to collect withdrawal liability…"

Though *Johnson* appears on its face to support the Plaintiff's position, the Ninth Circuit did not address the probate exception.  Moreover, *Johnson* was decided nearly two decades before the Supreme Court's clarification of the probate exception in *Marshall*.  *Johnson* is thus of limited value in the case at bar, because here the applicability of the probate exception is squarely presented, while the *Johnson* court did not even consider the doctrine.

Further, the Court notes that the probate exception specifically bars federal courts from probating a will or administering an estate.  *Markham*, 326 U.S. 490, 494 (1946).  Michigan's 63-day requirement for initiating suit after a notice of

15

disallowance is part of Michigan's probate framework, part of how Michigan administers estates.  As the Sixth Circuit has explained, the probate exception is a "practical doctrine designed to promote legal certainty and judicial economy by providing a single forum of litigation, and to tap the expertise of probate judges by conferring exclusive jurisdiction on the probate court."  *Wisecarver*, 489 F.3d at 749. Were it to hold that the 63-day requirement is preempted, the Court would be venturing into the domain of the probate administration and disrupting the legal certainty provided under Michigan's probate rules by allowing ERISA-related claims to re-open an estate for up to six years, regardless of the state's requirement that such claims be promptly made within 63 days.

Such a venture into the domain of probate administration would be an excursion undertaken in the absence of any supporting authority.  Beyond pointing to *Johnson*, which does not address the probate exception, Plaintiff fails to provide any support for this proposition.  Hence, the Court respectfully declines the invitation to make an end run around the probate exception and effectively become engaged in the administration of an estate.

## IV.  CONCLUSION

For the reasons discussed above, the Court holds that the probate exception to federal jurisdiction deprives the Court of jurisdiction to entertain Plaintiff's complaint.  Hence, Defendant Bartush's motion to dismiss **IS GRANTED** and Plaintiff's complaint **IS DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

Dated:  March 27, 2015                         s/Terrence G. Berg
                                               TERRENCE G. BERG
                                               UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on March 27, 2015, using the CM/ECF system, which will send notification to all parties.

                                               s/A. Chubb
                                               Case Manager

17